UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

| | |
|---|---|
| **JAMES BRAD BORING** | **CASE NO.** |
| **LONDON BORING** | **10-10301** |
| DEBTORS | CHAPTER 7 |
| **BRIAN BORDELON, JR.** | |
| PLAINTIFF | |
| v. | ADV. NO. 10-1041 |
| **JAMES BRAD BORING** | |
| DEFENDANT | |

**MEMORANDUM OPINION**

Brian Bordelon, Jr. sued for a determination that his claim against debtor James Brad Boring is not dischargeable under 11 U.S.C. §523(a)(6).[1]  The court heard testimony of the defendant and one of his former employees, the only two witnesses who testified in person at the dischargeability trial.  It also considered transcripts and other excerpts of the record of the state court lawsuit that were admitted into evidence.  In combination, the evidence establishes that the debtor's actions leading to Bordelon's claim against him were not willful and malicious within the meaning of 11 U.S.C. §523(a)(6) and so the debt is dischargeable.

FACTS

Boring, a licensed mobile home mover, owned and operated Affordable Movers, which transported and set up mobile homes.  Bordelon and Affordable Movers, through Boring, orally

---

[1]  A Louisiana state court previously rendered judgment against Boring and his company, Affordable Movers, LLC ("Affordable Movers"), based on its November 10, 2008 Reasons for Ruling.  Reasons for Ruling, *Brian Bordelon, Jr. v. Affordable Movers, LLC, et al.*, No. 2008-1577-B, 12th Judicial District Court, Avoyelles Parish, State of Louisiana (Exhibit P-1).

agreed[2] that Affordable would move Bordelon's mobile home from Odenberg, Louisiana to Hamburg, Louisiana.  The evidence established that Affordable also agreed to "deactivate" the mobile home and "reactivate"[3] it on the new site, all for the agreed sum of $1600.[4]  Bordelon made a $500 initial payment, with the balance to be paid upon completion.

When the job did not end as planned, Bordelon eventually sued Boring and Affordable Movers in Louisiana state court.  The state court's reasons for judgment recite that Affordable Movers began moving the trailer on December 20, 2007 but rain stopped the move in Simmesport, Louisiana.  The move resumed on December 28, 2007 and the trailer arrived at its intended site later that day.[5]  However, Bordelon and Boring later disagreed on whether Affordable could complete the work because of wet soil underlying the site and nearby standing water.  The parties' quarrel ended only when Boring left the job site.  Affordable never completed the work and the trailer remained unusable at the time of the bankruptcy court trial.

Boring testified repeatedly at the trial that he did not intend to cause any damage to Bordelon's trailer.  The defendant stated that he saw the site for the first time the day he delivered the trailer there.  He explained his understanding that Louisiana law barred him, a licensed mobile home mover, from completing the mobile home set up in light of the rainy and muddy conditions that existed that day.[6]  He stated that he would have blocked, strapped and leveled the

---

[2]  Paragraph 9 of the complaint alleges that the parties entered into a "verbal" contract.  However, the evidence established that their agreement was oral.

[3]  Reactivation comprises mounting a mobile home on concrete blocks on a trailer pad then leveling it.

[4]  Transcript of state court trial testimony of Brian Bordello, p. 85 (Exhibit P-6).

[5]  Boring in his state court trial testimony characterized the installation as a two hour job that took 12 or 13 hours as a result of mud and water at the destination, and was "very frustrating."  Transcript of state court trial testimony of James Boring, pp. 105-106 (Exhibit P-7).

[6]  Installation standards for mobile homes in Louisiana are set forth in La. R.S. 51:912.22.  In particular, La. R.S. 51:912.22(4) requires that manufactured home sites be "crowned, sloped or properly drained so that water will not flow or accumulate under the home."  It also mandates that the pier foundation rest on stable soil or compacted fill.

2

trailer had the site not been so muddy and oversaturated with water.[7] Boring claimed that he told Bordelon that it was "not a good idea" to set up the trailer that day and explained the potential risks, but testified that Bordelon insisted that the trailer setup go forward. Boring said he followed Bordelon's orders: "I did exactly what Mr. Bordelon insisted that I do." The defendant also claimed to have declined an offer of $500 cash from Bordelon to complete the work that day.

Boring was not available to complete the setup the next day, though his availability became moot once he left the job after an "insult situation" developed between him and Bordelon. Though Boring claimed that at some point during the project he told Bordelon he would return to complete the trailer installation when the water and soil conditions were suitable, on cross-examination he admitted telling Bordelon that day that he was not returning to the job. In any case he never did return to the site;[8] nor did Bordelon contact him afterward to complete the work. Bordelon testified at the state court trial that he didn't want Boring to return to the site; he never occupied the mobile home.

Bordelon sued Affordable Movers, LLC and Boring in the Twelfth Judicial District Court for the Parish of Avoyelles and on November 19, 2008 obtained a money judgment for $32,500

---

[7] Boring actually testified in state court that the specific part of the lot where some of the tires of the trailer were placed was hard gravel and some concrete, because a mobile home previously had been situated there. Transcript of state court trial testimony of James Boring, pp. 99-100 (Exhibit P-6).

[8] Boring abandoned at the site the wheels and axles Affordable had used to move the trailer.

3

against them *in solido*.[9] The Louisiana Court of Appeal, Third Circuit, affirmed the judgment on November 4, 2009.[10] Boring's chapter 7 bankruptcy followed.

## ANALYSIS

*1. The State Court Judgment Does Not Preclude Bordelon's Dischargeability Action.*

Bordelon contends that under Louisiana *res judicata* rules, no preclusive effect can be given to the state court ruling. His post-trial memorandum argues that the issue of intent was "never litigated at the state court level,"[11] where the issue was Boring's negligence. Thus, he reasons that the state court judgment does not control the outcome of this lawsuit. Boring, on the other hand, claims that precisely because the state court ruling was based on his negligence, it controls the outcome of this lawsuit by precluding Bordelon from now raising the issue of Boring's intent.

The state court awarded Bordelon damages but its ruling does not govern the dischargeability of Boring's debt. *See In re McDaniel*, 368 B.R. 515, 518 (Bankr. M.D. La. 2007). Even if the state court had ruled on Boring's intent, its ruling would not bind this court for purposes of a determination under 11 U.S.C. §523(a)(6). Bankruptcy courts independently must determine whether a debt is nondischargeable under bankruptcy law. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). *See also Matter of Dennis*, 25 F.3d 274, 277-78 (5th Cir. 1994). Thus, the court must determine on this record if the defendant had the intent necessary to render his debt to the plaintiff nondischargeable under section 523(a)(6).

---

[9] Judgment, *Brian Bordelon, Jr. v. Affordable Movers, LLC et al.*, No. 2008-1577-B, Twelfth Judicial District Court for Avoyelles Parish, State of Louisiana (Exhibit P-2).

[10] *Brian Bordelon, Jr. v. Affordable Movers, LLC, et al.*, 22 So.3d 1139, 2009-429 (La. App. 3 Cir. 2009) (Exhibit D-5).

[11] Plaintiff's Post-trial Memorandum, p. 9 (P-22).

4

   *2. Bordelon did not Prove that Boring's Actions were Willful and Malicious under 11 U.S.C. §523(a)(6).*

No party disputed the principal facts underlying the dispute, or that Bordelon's trailer was damaged during the move. The sole fact on which dischargeability depends is Boring's intent in proceeding with installation of the trailer at Bordelon's lot on December 28, 2007.

To prevail under §523(a)(6), a creditor must prove by a preponderance of the evidence that the debt is not dischargeable. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Section 523(a)(6) exempts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." In *Matter of Miller*, 156 F.3d 598 (5th Cir. 1998), the Fifth Circuit analyzed the elements of section 523(a)(6) following the Supreme Court's ruling in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 978, 140 L.Ed.2d 90 (1998). The *Miller* court reasoned that the term "willful and malicious injury" is a single, unitary concept that is determined by two-pronged test, namely, that "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller*, 156 F.3d at 606. The Fifth Circuit quickly reiterated its definition of "willful and malicious injury" in *In re Caton*, 157 F.3d 1026, 1030 (5th Cir. 1998).

More recently the Fifth Circuit has sharpened its analysis of the plaintiff's burden. It held that to render a debt nondischargeable under section 523(a)(6) "a debtor must commit an intentional or substantially certain injury [sic] in order to be deprived of a discharge. A debt is not excepted from discharge if the debtor has committed a willful or knowing act." *In re Williams*, 337 F.3d 504, 509 (5th Cir. 2003).[12]

---

[12] Moreover, debts arising from recklessly or *negligently* inflicted injuries do not fall within section 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 978, 140 L.Ed.2d 90 (1998) (emphasis supplied).

5

Bordelon insists that the defendant's intentional breach of the contract itself should render Boring's debt to him nondischargeable under §523(a)(6).  Indeed, the Fifth Circuit has held that a breach of contract *may* involve an intentional or substantially certain injury.  *See In re Williams*, 337 F.2d 504, 510 (5th Cir. 2003); *Walker,* 142 F.3d at 823; and *Miller,* 156 F.3d at 606.  "[A] knowing breach of a clear contractual obligation that is certain to cause injury may prevent discharge under Section 523(a)(6) …."  *Williams*, 337 F.3d at 510.  But the intentional contract breach alone will not render a debt nondischargeable.  "[T]he dischargeability of contractual debts under Section 523(a)(6) depends upon the *knowledge and intent* of the debtor at the time of the breach."  *Id*. (Emphasis added.)  And the plaintiff must prove that the defendant intended an "objective substantial certainty of harm or a subjective motive to cause harm."  *Miller*, 156 F.3d at 606.

Application of these authorities to the evidence compels the conclusion that plaintiff did not prove that Boring had the intent necessary to make his debt to Bordelon nondischargeable under Bankruptcy Code section 523(a)(6).

Boring testified that he first visited the property where Bordelon's trailer was to be set up the day he delivered the trailer to the site.  Boring claimed that even after he told Bordelon that the ground was too wet to actually reactivate the mobile home Bordelon insisted on reactivating it.  In contrast, Bordelon testified at the state court trial that Boring alone made the decision to attempt reactivation of the trailer in the inclement weather and with undesirable soil conditions at the site on December 28.  Bordelon's cousin, Jacob Adams, also testified in state court that Boring insisted on moving the trailer that day.  However, the *reason* Boring proceeded with the work, as well as the reason he breached the contract by not completing the job, does not govern

6

the outcome here: the crucial fact is whether Boring *intended* to cause injury to Bordelon or his property.

Bordelon understandably emphasizes Boring's testimony on cross-examination in this court, during which the debtor conceded that setting up a mobile home on a saturated site posed risks. Bordelon characterizes that as Boring's admission that he knew damage to Bordelon's trailer was substantially certain. However, that gloss inaccurately depicts Boring's trial testimony: he did not admit at trial that he knew the operation would cause damage specifically to Bordelon's trailer; rather, it was that his company's equipment used to move and set up the trailer faced damage in the soft, wet soil.

Boring did explain at trial that although he could not "look in the future," damage "normally happens when you are dealing with the mud and the water." But even that testimony does not demonstrate Boring's certainty that Bordelon's trailer would be damaged in the process. Additionally, the evidence established that the plaintiff's lot had an area of hard gravel and concrete on which Affordable could place the trailer's tires, which supports an inference that it was *not* substantially certain Boring's actions would cause damage to the trailer itself. Boring might have known the risks that could be involved in placing the trailer on the site at Bordelon's insistence but the plaintiff offered no proof that he knew, or was substantially certain, that the trailer would be damaged.

This court observed Boring during his testimony and concluded his statement that he did not intend to harm Bordelon's trailer was credible. This court also finds credible Boring's testimony that Bordelon insisted on proceeding with the installation despite the weather and job

site conditions. In contrast, Bordelon did not appear to testify, instead offering a transcript of his own and his cousin's state court testimony. No other live witnesses testified on his behalf.[13]

The transcribed testimony does not prove that Boring's actions were substantially certain to cause damage to Bordelon's mobile home, much less that he intended the damage. The state court record only supports a finding that the plaintiff's trailer sustained damage not as the result of Bordelon's intentional act, but rather because of his negligence. His angry departure from the job site does not alter that analysis, especially in light of Bordelon's insistence that he would not permit Boring to work on the mobile home after the two parted.

## CONCLUSION

James Boring plainly breached his oral agreement with Brian Bordelon by walking off the job and never returning to complete the reactivation of the mobile home that sustained damage as a result of Boring's negligence. However, the evidence does not support a finding that Boring intended that damage, or that the damage was substantially certain to result from his actions. Therefore, it does not support a conclusion that James Boring acted willfully and maliciously in connection with the mobile home move, and so his liability to Brian Bordelon is dischargeable.

Baton Rouge, Louisiana, March 22, 2011.

**s/Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[13] The conflicting state court trial testimony of Boring, Bordelon and Adams (Bordelon's cousin) concerning the identity of the party who decided to proceed with the reactivation despite the poor ground conditions presents a final issue, and the court gives more weight to Boring's live testimony. The parties' stipulation to the admissibility of the trial transcripts does not relieve the plaintiff from the risks of relying on testimony that is not live because of the difficulty of determining witnesses' credibility when the appearance and demeanor of witnesses cannot be evaluated. Parties deciding to submit a witness's testimony through a transcript "must nevertheless be held to assume the risk that the court will make a credibility determination from the transcript itself." *Matter of Reavis*, 92 B.R. 380, 386 n.1 (Bankr. W.D. Mo. 1988).